FORM 5.  Petition for Review or Notice or Appeal of an Order or Decision of an AGENCY, BOARD, COMMISSION, OFFICE OR BUREAU

Form 5
Rev. 03/16

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

BlackBerry Corp. and BlackBerry Ltd.
_____,

Petitioner or Appellant,

v.     **PETITION FOR REVIEW**

Zipit Wireless Inc.
_____,

Respondent or Appellee.

BlackBerry Corp. and BlackBerry Ltd.
_____ (name all parties* bringing the petition or appeal)

hereby petition/appeal the court for review of the Final Written Decision in IPR2014-01506 (describe

the order or decision and include decision number) of the USPTO Patent Trial and Appeal Board

(name the agency, board, office or bureau) entered on March 29, 2016 (date).

The order or decision was received on March 29, 2016 (date).

Date: May 11, 2016

/Robert C. Mattson/

(Signature of petitioner, appellant or attorney)

Oblon, McClelland, Maier & Neustadt, LLP

1940 Duke Street, Alexandria, Virginia  22314

(703) 412-6466

cpdocketmattson@oblon.com

(Address, phone number and e-mail of petitioner, appellant or attorney)

*See Fed. R. App. P. 15 (a) (2) for permissible ways of identifying petitioners.

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————

BLACKBERRY CORP. AND BLACKBERRY LTD.,

Petitioners,

v.

ZIPIT WIRELESS INC.,

Patent Owner.

————————

Case IPR2014-01506

U.S. Patent No. 7,894,837
————————

**PETITIONERS' NOTICE OF APPEAL**

via PRPS
Patent Trial and Appeal Board

First-Class Mail
Director of the United States Patent and Trademark Office
c/o Office of the General Counsel, 10B20
Madison Building East
600 Dulany Street
Alexandria, VA 22314

via CM/ECF
United States Court of Appeals for the Federal Circuit

Notice is hereby given, pursuant to 37 C.F.R. § 90.2(a), that Petitioners,

BLACKBERRY CORP. AND BLACKBERRY LTD., hereby appeal to the United

States Court of Appeals for the Federal Circuit from the Final Written Decision

entered on March 29, 2016 (Paper No. 50) (the "Final Written Decision"), and

from all underlying orders, decisions, rulings and opinions regarding U.S. Patent

No. 7,894,837 ("the '837 Patent").

In accordance with  37 C.F.R. § 90.2(a)(3)(ii), Petitioners further indicate

that the issues on appeal may include the following, as well as any underlying

findings, determinations (including claim constructions), rulings, decisions,

opinions, or other related issues:

The Board erred in finding that

(1) claims 1–4, 10–15, and 17 of the '837 patent are not unpatentable under

35 U.S.C. § 102 as anticipated by e740 User's Manual;

(2) claims 1–5, 10–17, and 20 of the '837 patent are not unpatentable under

35 U.S.C. § 103(a) as obvious over the e740 User's Manual and Morrison; and

(3) claims 5 and 16 of the '837 patent are not unpatentable under 35 U.S.C.

§ 103(a) as obvious over the e740 User's Manual and the Nokia IM+ Manual.

Simultaneously with this submission, Petitioners are providing a true and

accurate copy of this Notice of Appeal to the Office of the General Counsel for the

U.S. Patent and Trademark Office via U.S. First-Class Mail and submitting via

Petitioners' Notice of Appeal
Case IPR2014-01506
U.S. Patent No. 7,894,837

ECF a true and correct copy of the same, along with the required docketing fee,

with the Clerk of the United States Court of Appeals for the Federal Circuit, as set

forth in the accompanying Certificate of Filing.


          Respectfully submitted,

          Oblon, McClelland, Maier &
          Neustadt, LLP

Dated: May 11, 2016        /Robert C. Mattson/
          Robert C. Mattson
          Registration No. 42,850
          *Counsel for Petitioners,*
          *BLACKBERRY CORP. and*
          *BLACKBERRY LTD.*

Customer Number
    22850
Tel. (703) 413-3000
Fax. (703) 413-2220

Petitioners' Notice of Appeal
Case IPR2014-01506
U.S. Patent No. 7,894,837

## CERTIFICATION OF FILING

The undersigned hereby certifies that, in addition to being electronically filed

through PRPS, a true and correct copy of the above-captioned NOTICE OF APPEAL

is being provided via first-class mail to the following address:

> Director of the United States Patent and Trademark Office
> c/o Office of the General Counsel
> United States Patent and Trademark Office
> Madison Building East, 10B20
> 600 Dulany Street
> Alexandria, VA 22314

The undersigned also hereby certifies that a true and correct copy of the

above-captioned NOTICE OF APPEAL is being filed via CM/ECF with the

Clerk's Office for the United States Court of Appeals for the Federal Circuit.

Respectfully submitted,

Oblon, McClelland, Maier &
Neustadt, LLP

Dated: May 11, 2016

/Robert C. Mattson/
Robert C. Mattson
Registration No. 42,850
*Counsel for Petitioners,*
*BLACKBERRY CORP. and*
*BLACKBERRY LTD.*

Customer Number
22850
Tel. (703) 413-3000
Fax. (703) 413-2220

1

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to 37 C.F.R. § 42.6(e), the undersigned certifies service of

PETITIONERS' NOTICE OF APPEAL on the counsel of record for the

Petitioners by filing this document through the Patent Review Processing System

as well as delivering a copy via electronic mail to the following addresses:


Stephen R. Risley
Robert B. Dulaney III
SMITH RISLEY TEMPEL SANTOS LLC
Two Ravinia Drive, Suite 700
Atlanta, GA 30346
srisley@srtslaw.com
rdulaney@srtslaw.com


Dated: May 11, 2016                    /Robert C. Mattson/
                                       Robert C. Mattson
                                       Registration No. 42,850

Trials@uspto.gov
Tel: 571-272-7822

Paper 50
Entered: March 29, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

BLACKBERRY CORP. and BLACKBERRY LTD.,
Petitioner,

v.

ZIPIT WIRELESS, INC.,
Patent Owner.
_____

Case IPR2014-01506
Patent 7,894,837 B2
_____

Before TREVOR M. JEFFERSON, NEIL T. POWELL, and
FRANCES L. IPPOLITO, *Administrative Patent Judges*.

JEFFERSON, *Administrative Patent Judge*.

FINAL WRITTEN DECISION
*35 U.S.C. § 318(a) and 37 C.F.R. § 42.73*

IPR2014-01506
Patent 7,894,837 B2

# I.  INTRODUCTION

### A. *Background*

Blackberry Corp. and Blackberry Ltd. (collectively, "Petitioner") filed a Petition (Paper 1, "Pet.") to institute an *inter partes* review of claims 1–5, 10–17, and 20 of U.S. Patent No. 7,894,837 B2 (Ex. 1001, "the '837 patent"). *See* 35 U.S.C. § 311.  Patent Owner, ZIPT Wireless, Inc. did not file a Preliminary Response.  Pursuant to 35 U.S.C. § 314, in our Decision to Institute (Paper 6, "Dec."), we instituted this proceeding as to claims 1–5, 10–17, and 20 of the '837 patent.  Dec. 9.

Patent Owner filed a Patent Owner Response (Paper 10, "PO Resp.") and Petitioner filed a Reply (Paper 14, "Reply").  We authorized Patent Owner to file a Sur-Reply to allegations raised by Petitioner's Reply.  Patent Owner's Sur-Reply was filed on November 6, 2015 (Paper 25, "Sur-Reply").  Petitioner subsequently withdrew portions of its Reply.  Paper 38.

Petitioner filed a motion to exclude evidence (Paper 34, "Pet. Mot. Excl."), Patent Owner filed an opposition (Paper 41, "PO Opp. Excl.") to which Petitioner filed a reply (Paper 45, "Pet. Reply Excl.").  Similarly, Patent Owner filed a motion to exclude Petitioner's evidence (Paper 37, "PO Mot. Excl."), Petitioner filed an opposition (Paper 42, "Pet. Opp. Excl.") to which Patent Owner filed a reply (Paper 47, "PO Reply Excl.").

An oral hearing in this matter was held on Dec. 7, 2015 (Paper 49, "Tr.").

We have jurisdiction under 35 U.S.C. § 6(c).  This Final Written Decision is issued pursuant to 35 U.S.C. § 318(a) and 37 C.F.R. § 42.73.  For the reasons that follow, Petitioner has not demonstrated by a preponderance of the evidence that claims 1–5, 10–17, and 20 of the '837 patent are unpatentable.

IPR2014-01506
Patent 7,894,837 B2

### B. Related Matters

Petitioner states that the '837 patent has been asserted in *Zipit Wireless Inc. v. BlackBerry Ltd.*, No. 6:13-cv-2959-JMC (D.S.C. 2013). Pet. 1. In addition, Petitioner has filed petitions challenging the patentability of certain claims in U.S. Patent Nos. 7,292,870 (IPR2014-01507); 8,086,678 (IPR2014-01508); and 8,190,694 (IPR2014-01509).

### C. The '837 Patent

The '837 patent relates to a handheld instant messaging ("IM") device. Ex. 1001, 1:16–18. The '837 patent discloses an IM terminal that includes a display and a data entry device integrated in a housing for the IM terminal. *Id.* at 4:25–28. The data entry device allows entry of graphical symbols (such as emoticons supported by an IM service provider) or textual characters via dedicated or programmable keys, a Wi-Fi communications module for communicating messages with a Wi-Fi access point, and a control module for coordinating authorization to coupling the IM terminal to a local network using a wireless access point and for controlling the IM conversation session. *Id.* at 4:28–35, 4:36–55, Figs. 12a and 12b.

Figures 12a and 12b are provided below.

IPR2014-01506
Patent 7,894,837 B2



Fig. 12A

Fig. 12B

Figures 12a and 12b show user interface screens that associate emoticon pictorial images with programmable keys. *Id.* at 9:27–28. Figures 12a and 12b show screens used in the emoticon selection procedure. Figure 12a identifies keys of keyboard 68 (not shown) that are associated with selected emoticons. Figure 12b shows a screen that instructs the user to use the "<" and ">" keys on either side of the displayed symbol to change the graphical symbol that is associated with a programmable key, e.g. PF2. *Id.* at 16:1–8.

IPR2014-01506
Patent 7,894,837 B2

The handheld terminal of the '837 patent manages multiple IM conversations over Internet protocol ("IP") through different IM service providers. *Id.* at 5:16–63, Abstract. The device generates a buddy list of contacts associated with each IM service provider and displays conversation windows for each buddy with whom the user is engaged in active conversation. *Id.* at 5:16–35. The device detects signals from local wireless access points, prioritizes the access points according to their signal strength, and selects the one having the strongest signal for local network access. *Id.* at 4:56–62.

*D. Illustrative Claims*

Illustrative independent claims 1 and 11 (Ex. 1001, 23:20–24:55–25:8) are reproduced below:

> 1.    A handheld instant messaging terminal comprising:
>
> a handheld terminal housing;
>
> a data entry device integrated in the terminal housing, the data entry device being configured to generate textual characters and graphical symbols in response to actuation of the data entry device;
>
> a display mounted in the terminal housing to display textual characters and graphical symbols including the textual characters and graphical symbols generated by the data entry device;
>
> an Internet protocol communications module located within the handheld terminal housing to generate data messages in an Internet protocol;
>
> a wireless transceiver mounted within the handheld terminal housing and coupled to the Internet protocol communications module to generate wireless data messages that include the data messages in the Internet protocol, the wireless transceiver radiates the wireless data

messages from an antenna coupled to the wireless transceiver; and

a control module located within the handheld terminal housing and coupled to the Internet protocol communications module, the control module including at least one processor that executes an application program to implement at least one instant messaging protocol for generation of instant messaging (IM) data messages that are compatible with an instant messaging service, the control module providing the IM data messages that are compatible with an instant messaging service to the Internet protocol communications module to enable the IM data messages to be communicated during at least one conversation session through the Internet protocol communications module and the wireless transceiver.

11.    A method for managing wireless network access and instant messaging through a wireless access point with a handheld instant messaging terminal comprising:

generating textual characters and graphical symbols in response to manipulation of keys on a data entry device of a handheld instant messaging terminal;

displaying the generated textual characters and graphical symbols on a display of the handheld instant messaging terminal;

generating data messages with the generated textual characters and graphical symbols in accordance with at least one instant messaging protocol that is compatible with an instant messaging service;

wirelessly transmitting the generated data messages to a wireless network access point through an Internet protocol communications module and wireless transceiver in the handheld instant messaging terminal; and

IPR2014-01506
Patent 7,894,837 B2

> controlling a conversation session in accordance
> with the at least one instant messaging protocol being
> implemented with a control module located within the
> handheld instant messaging terminal.

### E. The Asserted Grounds

We instituted trial on the grounds alleging that claims 1–4, 10–15, and 17 are unpatentable under 35 U.S.C. § 102(b) as anticipated by TOSHIBA POCKET PC e740 USER'S MANUAL (2002) (Ex. 1004, "e740 User's Manual"); claims 5 and 16 are unpatentable under 35 U.S.C. § 103(a) as obvious over the e740 User's Manual and IM+ MULTI-SYSTEM MOBILE INSTANT MESSENGER FOR NOKIA 7650/3650, VERSION 2.18 (2002) (Ex. 1005, "Nokia IM+"); and claims 1–5, 10–17, and 20 are unpatentable under 35 U.S.C. § 103(a) as obvious over the e740 User's Manual and Michael Morrison, SPECIAL EDITION: USING POCKET PC 2002 (2002) (Ex. 1008, "Morrison"). Dec. 9.

## II. ANALYSIS

### A. Objections to Patent Owner's Declarant

Petitioner raised substantive objections to the credentials, qualifications and veracity of Patent Owner's declarant, Dr. Alon Konchitsky. We address these allegations and objections below.

#### 1. Dr. Konchitsky's Ph.D. Credentials

Petitioner asserts that Patent Owner's declarant, Dr. Alon Konchitsky, did not receive a genuine Ph.D. from Bournemouth University and, as a result, Dr. Konchitsky's testimony is entitled to no weight. Reply 1. Patent Owner responds that Dr. Konchitsky received an electrical engineering Ph.D. degree from Bournemouth University Extension in Israel, Campus of Ramat Gan College, and submits that several documents including Dr. Konchitsky's Ph.D. diploma and

IPR2014-01506
Patent 7,894,837 B2

Ph.D. payment receipts corroborate Dr. Konchitsky's Ph.D. Sur-Reply 1–3; Exs. 1059–1060. In his declaration, Dr. Konchitsky provides that he "unequivocally state[s] – ***under penalty of perjury*** – that **I did in fact receive my Ph.D. in electrical engineering from the Bournemouth University Extension in Israel, Campus of Ramat Gan College.**" Ex. 2082 ¶ 17.

We note first that the parties do not dispute that Dr. Konchitsky is qualified to provide his expert opinion on the subject matter of the '837 patent even without considering his Ph.D. from Bournemouth University. Sur-Reply 13–15; Tr. 4:14–22, 21:1–15. Petitioner concedes that Dr. Konchitsky "worked at Nokia. He worked at a company that was purchased by Intel. To be able to testify about emoticons and parental controls on devices he meets the low threshold under the federal rules for providing expert testimony." Tr. 4:21–24. Accordingly, the circumstances surrounding Dr. Konchitsky's Ph.D. credentials go to the weight of his testimony rather than admissibility.

Further, we do not find that Petitioner has demonstrated sufficiently that Dr. Konchitsky's testimony should be afforded diminished weight because *Dr. Konchitsky* falsified his Ph.D. from Bournemouth University Extension through Ramat Gan College in Israel. Petitioner concedes that

> [t]he sur-reply shows that it's possible that Konchitsky did receive a degree from either Ramat Gan or the extension at Ramat Gan. That was not an authorized diploma, had nothing to do with the Bournemouth University. And whether or not he knew that or was unwittingly duped into believing that he was getting a genuine Bournemouth University diploma, in the time allotted in IPR and our resources, there's just not enough time and money available to prove that circumstantial case whether he knew that his diploma was not genuine.

Tr. 5:14–22. Additionally, Petitioner has withdrawn all its allegations that Dr.

8

IPR2014-01506
Patent 7,894,837 B2

Konchitsky himself engaged in any act of forgery or perjury with respect to his Ph.D. Ex. 2106; Tr. 4:11–23, 6:13–8:2. This is not to say that there is sufficient evidence to establish whether Dr. Konchitsky's Ph.D. is genuine. However, as Petitioner argues, the issue is one of Dr. Konchitsky's veracity and credibility. Tr. 7:7–17. Thus, while it may be possible Dr. Konchitsky's Ph.D. is not genuine, Petitioner has not shown that Dr. Konchitsky engaged in any wrongdoing in obtaining his Ph.D. or representing that he obtained a Ph.D. from Bournemouth University Extension in Israel. Thus, we do not diminish the weight of Dr. Konchitsky's on this basis.

### 2. *Dr. Konchitsky's Masters Credentials*

Petitioner further argues that Dr. Konchitsky's mischaracterization of his Master's degree from Bournemouth University (Tr. 6:15–23) demonstrates Dr. Konchitsky's lack of credibility and diminishes the weight of his testimony (*see id.* at 9:7–14). Petitioner does not dispute Dr. Konchitsky received a Master's degree from Bournemouth University. Tr. 13:9–15. Rather, Petitioner asserts that Dr. Konchitsky has embellished his Master's degree in tourism and hospitality management by describing it as a degree in "management and business." *Id.* at 5:23–25.

Dr. Konchitsky and Patent Owner do not dispute that Dr. Konchitsky's curriculum vitae *does not* state that his Master's degree was issued in "Tourism and Hospitality Management." Ex. 2082 ¶ 94; *see* Tr. 21:5–7. Dr. Konchitsky asserts that he believes his CV is accurate because his

> Master's thesis was focused on computers and computer science, and how personal computers could best be integrated into a hotel's business. This field, where I was forecasting the trend in a particular vertical industry, is part of Information Technology in graduate business

9

IPR2014-01506
Patent 7,894,837 B2

> studies, which is a subcategory of the school of
> management.

Ex. 2082 ¶ 94.  While the argument may be made that Dr. Konchitsky's description
of his Master's degree is merely harmless embellishment or an artful rewording
having the same effective meaning, we find that Dr. Konchitsky, nevertheless,
incorrectly described his Master's degree and misrepresented his credentials to the
Board.  Further, that Dr. Konchitsky may be qualified to testify based on his
undergraduate degrees and experience, as asserted by Patent Owner (Tr. 21:16–5),
does not mitigate Dr. Konchitsky's misrepresentation of his credentials nor
preclude us from appropriately weighing his testimony in light of such
misrepresentation.  We expect all parties and individuals involved in proceedings
before the Board to "have a duty of candor and good faith to the Office during the
course of a proceeding."  37 C.F.R. § 42.11.  Moreover, we agree with the
sentiment that "[e]ven the slightest accommodation of deceit or a lack of candor in
any material respect quickly erodes the validity of the process.  As soon as the
process falters in that respect, the people are then justified in abandoning support
for the system in favor of one where honesty is preeminent."  *United States v.
Shaffer Equip. Co.*, 11 F.3d 450, 457 (4th Cir. 1993).  Therefore, we will consider
Dr. Konchitsky's statements regarding his Master's degree in affording his
testimony the appropriate weight.

### 3.  Dr. Konchitsky's Translation of Mr. Cohen's Statement

Petitioner further argues that the circumstances of Dr. Konchitsky's
incorrect translation of Mr. Cohen's Statement (Ex. 2092), submitted to support his
Ph.D. from Bournemouth University Extension through Ramat Gan College in
Israel, demonstrate a lack of credibility and reliability.  Pet. Mot. Exclude 4;
Ex. 1061.  In particular, Petitioner argues that the incorrect English translation of

IPR2014-01506
Patent 7,894,837 B2

Mr. Cohen's Statement includes the phrase "[d]uring the time period 1999-2002, the Extension offered a doctoral program in communication systems in electrical engineering," for which the Hebrew counterpart does not appear in the original Hebrew version.  Ex. 2092, 2.

At the Oral Hearing, counsel for Patent Owner indicated that it relied on Dr. Konchitsky for the translation of all documents in his supplemental declaration (Ex. 2082).  Tr. 13:22–14:11.  Counsel for Patent Owner further represented that there was a "mismatching problem between the drafts" that resulted in the submission of an English version that did not match the statement in Hebrew.  *Id.* at 14:16–21.  Patent Owner's counsel stated that

> we have now obtained a declaration from Dr. Konchitsky that explains how the error occurred.  And we also have a certified translation and have obtained a corrected, if you will, Exhibit 2092 from Mr. Cohen that matches the English version.  And in short, just like I said Friday during the call, Dr. Konchitsky says it was a mismatching problem between the drafts that were discussed and exchanged with Mr. Cohen.  He apparently mixed up the English translation with the Hebrew version.  We don't, of course, speak Hebrew, so we couldn't catch the mistake ourselves.

*Id. at* 14:12–21.  Patent Owner did not provide a certified translation of Exhibit 2092 at the time of filing as it was required to do per 37 C.F.R. § 42.63(b).

We find that "mismatching" situation could have been avoided if a proper certified translation of Exhibit 2092 had been completed and submitted as required by Rule 42.63.  In addition to the incorrect and misleading translation, we note that Patent Owner's reliance on Dr. Konchitsky's self-translated evidence strongly undermines the credibility of the facts submitted in support of Konchitsky's Ph.D. credentials.  Although we do not dismiss Dr. Konchitsky's testimony on this

IPR2014-01506
Patent 7,894,837 B2

basis,[1] the misleading translation proffered by Patent Owner erodes the foundation of Dr. Konchitsky's declaration and the weight we grant his testimony, and undermines the foundation of our trial process.

With these considerations in mind, we now turn to the construction of certain claim terms.

B. *Claim Construction*

In an *inter partes* review, claim terms in an unexpired patent are given their broadest reasonable construction in light of the specification of the patent in which they appear. 37 C.F.R. § 42.100(b); *see also In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1278–79 (Fed. Cir. 2015) ("We conclude that Congress implicitly approved the broadest reasonable interpretation standard in enacting the AIA" and "the standard was properly adopted by PTO regulation."), *cert. granted sub nom. Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 890 (mem.) (2016). Under the broadest reasonable construction standard, claim terms are given their ordinary and customary meaning, as would be understood by one of ordinary skill in the art, in the context of the entire disclosure. *In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007). Any special definition for a claim term must be set forth with reasonable clarity, deliberateness, and precision. *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994).

---

[1] Petitioner has requested authorization to file a motions for sanctions based on Dr. Konchitsky's translation of Exhibit 2092. Specifically, at the Oral Hearing, Petitioner requested reimbursement for the cost of obtaining certified translations of Exhibits 2087, 2091, and 2092. Tr. 9:13–16. On February 12, 2016, by email correspondence to the Board, the parties informed us that Patent Owner "has fully reimbursed Petitioner for the cost of obtaining certified translations of Exhibits 2087, 2091, and 2092." Ex. 3001. Accordingly, we treat Petitioner's request to file a motion for sanctions as moot.

IPR2014-01506
Patent 7,894,837 B2

### 1. *"graphical symbol"*

Petitioner did not propose a construction of the claim term "graphical symbol" as recited in the challenged claims. *See* Pet. 9–10. Instead, the Petition equated a graphical symbol to "emoticons." Pet. 5 (citing Ex. 1001, 4:36–55, Figs. 12a and 12b). Our Decision did not determine a broadest reasonable interpretation for the claim term.

Patent Owner contends that the broadest reasonable interpretation by a person of ordinary skill in the art in light of the specification is that "graphical symbols," are "graphical emoticons" and *not* individual textual characters or such characters combined to form text emoticons. PO Reply 5. Patent Owner argues that contrary to Petitioner's contention, there is no applicable plain and ordinary meaning. Tr. 61:1–6. Patent Owner further argues that Petitioner fails to provide evidence that the cited prior art teaches or suggests graphical emoticons. Instead, Patent Owner contends that the Petitioner's evidence "merely discloses individual 'textual characters,' such as ':', '-', ')', '$', '=', and '&'" and fails to show "any combination of textual characters that '*generate*' a 'graphical symbol.'" PO Reply 5–6.

In support of "graphical symbol" being construed as graphical emoticon, Patent Owner cites the '837 patent's reference to Ex. 2003, Miller, U.S. Patent No. 6,629,793 ("the '793 patent"), which discloses a specialized graphical emoticon keyboard designed to support instant messaging that resolves textual/graphical data entry issues for regular sized keyboards. PO Resp. 6; see Ex. 1001, 2:66–3:5. Patent Owner argues that the '793 patent expressly states that "emoticon can be a text emoticon, such as the smiley face : ) or it can be a graphic emoticon." *Id*.; Ex. 2003, 1:37–38; *see also* Ex. 2003, 9:50–54 ("An emoticon can also be a graphic such as the emoticon faces shown in section the pull-down menu

IPR2014-01506
Patent 7,894,837 B2

606 of FIG. 6 below.  As an example, Table 7 below shows a commonly known list of text emoticons."); 13:33–36 (stating that "displaying a text emoticon in the dominant display window in step 820, displaying a graphic emoticon in the dominant display window in step 822"); 13:54–57 (stating that "the application 114 uses the character map described in Table 9 and determines that a particular graphic emoticon, such as those shown in pull-down menu 606 of FIG. 6,"); 14:51–52 ("a text emoticon or a graphic emoticon.").  Patent Owner relies on Ex. 2003 as referenced in the background of the '837 patent along with the Declaration of Dr. Konchitsky, Ex. 2007, to establish that Miller supports a distinction in the art between emoticons made of known textual characters (such as an ampersand, or parentheses) and graphical emoticons, represented by pictorial smiley faces.  PO Resp. 6–8 (citing Ex. 2003, Figs. 2, 3 and 6).

The '837 patent states that

> Emoticons are graphical symbols intended to convey emotional aspects of a message. For example, one instant messaging service may require the typing of the following characters :-) to generate the symbol ☺, while another instant messaging service may only require the typing of :) to generate the symbol ☺, which is typically known as the smiley face.

Ex. 1001, 3:34–39.  Based on this passage and numerous references throughout the '837 Specification, Patent Owner contends that the generation of a "symbol" from typed characters indicates that emoticons represented by symbols such as the "☺" are the "graphical symbols" as recited in the claims.  PO Resp. 8–9 (citing Ex. 1001, 4:36–55, 6:49–67, 8:2–7, 8:17–20, 16:1–10, 17:47–18:13, 18:35–48, 19:13–27, Figs. 2, 12a, and 12b).

Patent Owner also argues that the express statement that graphical symbols can be entered by using emoticon keys or programmable keys further supports the

IPR2014-01506
Patent 7,894,837 B2

contention that graphical symbols are graphical emoticons. PO Resp. 9–11 (citing Ex. 1001, 16:1–10, 18:1–7, Figs. 12a and 12b). In sum, Patent Owner contends that the '837 patent Specification and claims distinguish between textual characters and graphical symbols, e.g. "☺," which are generated from typed characters, e.g. ":-)." PO Resp. 12–19.

Petitioner does not dispute that emoticons, such as ☺, are "graphical symbols," but contends that "graphical symbols" are not limited to such emoticons and can include emoticons of typed textual characters. Reply 12. In rebuttal to Patent Owner's contentions, Petitioner argues that the '837 patent does not expressly equate "graphical symbol" with "graphical emoticon," nor does it distinguish textual characters from graphical symbols. Reply 12–20. Furthermore, Petitioner asserts that the patentee did not act as its own lexicographer. Petitioner argues that its Declarant, Dr. Brody, and Petition relied on the plain and ordinary meaning of the term "graphical symbol." Reply 21; Tr. 31:3–6 (Petitioner's counsel stated that "[t]he petitioner's construction for graphical symbols is that that term should be given its plain and ordinary meaning. That was something that was explained by Dr. Brody in his declaration, Exhibit 1003."); *see also* Deposition of Alon Konchitsky, Ph.D., Ex. 1021, 69:6–24 (Konchitsky stating that the plain and ordinary meaning of graphical symbol is graphical emoticon).

Petitioner further asserts that Patent Owner's construction unreasonably narrows the construction of "graphical symbols" based on misreading passages of the '837 patent and reliance on the Miller patent that is not incorporated by reference. Reply 12–20. Petitioner's construction relies on its Declarant's testimony that the broadest reasonable interpretations of "textual characters" and "graphical symbols" is their plain and ordinary meaning. Reply 20–21; Ex. 1003 ¶ 27 (stating that "the broadest reasonable interpretation of the claim terms of the

IPR2014-01506
Patent 7,894,837 B2

'837 patent is generally consistent with the terms' ordinary and customary meaning, as a PHOSITA would have understood them").

Based on the full record and consideration of the parties' arguments and evidence, we determine that the broadest reasonable interpretation of the term "graphical symbols," as would be understood by one of ordinary skill in the art, in the context of the entire disclosure is "graphical emoticon."  *See* Ex. 1001, 3:37–39, 4:36–55, 6:49–67, 8:17–20, 16:1–10, 17:47–18:13, Figs. 12a and 12b.  We agree with Patent Owner that the Specification of the '837 patent shows "symbols" being generated by textual characters.  PO Resp. 14–15 (citing Ex. 1001 3:34–44, 4:40–55).  Specifically, the '837 patent refers to characters generating graphical symbols where symbols are pictorial representations, e.g. ☺, indicates to a person of ordinary skill in the art that symbols (and graphical symbols) are distinct from the textual characters used to generate them.  Ex. 1001 3:34–44, 4:40–55.  Thus, we are not persuaded by Petitioner's argument or the testimony of their Declarant that the '837 patent Specification does not distinguish between characters and symbols.  Reply 12–13.  We find that the Specification of the '837 patent showing combination of textual characters that are used to generate "graphical symbols" across different messaging services further supports the distinctions between textual characters and graphical symbols.  *See* Ex. 1001, 6:64–67; 8:2–7, Tables 1–4.

We are similarly not persuaded by Petitioner's argument that unreasonably broadens "graphical symbols."  Reply 13–15.  Petitioner's Declarant testimony asserts that "[w]hether a character is textual or graphical depends on the context in which it is used."  Reply 16.  However, Petitioner's argument ignores the context in which the terms "textual characters" and "graphical symbols" are used in the Specification and claims of the '837 patent.  Indeed, the claims themselves support

IPR2014-01506
Patent 7,894,837 B2

a distinction between textual characters and graphical symbols.  The claims refer to a "device being configured to generate textual characters and graphical symbols" and a "terminal housing to display textual characters and graphical symbols including the textual characters and graphical symbols generated by the . . . device" (claim 1);  "generating textual characters and graphical symbols" and "displaying the generated textual characters and graphical symbols" (claim 11); "parsing textual characters and graphical symbols" and "confirming the entered characters are compatible with the instant messaging service" (claim 19). Moreover, claim 2 recites that "a set of characters corresponding to a graphical symbol supported by an instant messaging service" in reference to the graphical symbol keys supported by the Specification.  Finally, claim 13 recites "a character sequence that represents the graphical symbol."  The claims in light of the Specification of the '837 patent support the determination that "graphical symbols" refer to "graphical emoticons" and not the string of textual characters that may represent the graphical emoticon.

We are also persuaded by Patent Owner's argument that the '837 patent Specification shows that "graphical symbols" are entered using emoticon keys or programmable keys, while textual characters are entered by typing on a keyboard. PO Resp. 15–16 (citing Ex. 1001, 18:1–4, Fig. 2).  The '837 patent distinguishes the symbols shown in Figure 2, which include characters such as "$" from "graphical symbols" entered by an emoticon or programmable key.  Ex. 1001, 18:1–4, Fig. 2.  This distinction contradicts Petitioner's description of "graphical symbols" being disclosed in the e740 User's Manual by characters such as "$" and "=".  Pet. 23.

We note that Petitioner fails to cite any persuasive intrinsic evidence that supports its contention regarding the plain and ordinary meaning of the term

IPR2014-01506
Patent 7,894,837 B2

"graphical symbols." Petitioner's argument is based on extrinsic declaration testimony. We find unavailing Petitioner's argument that "a [person of ordinary skill in the art] would know that characters such as a colon, dash, and closed parentheses are flexible in their usage and not strictly categorized as 'textual' or 'graphical'" and refutes the usage of the term "graphical symbol" in the Specification and claims of the '837 patent. Reply 20 (citing Ex. 2006, 84:2, 89:– 18, 170:17–171:25,180:3–14). Petitioner's reliance on general knowledge of an ordinarily skilled artisan broadens the term "graphical symbol" in a manner that disregards the context and usage of the term. Petitioner's arguments regarding the alleged flexible usage of textual and graphical symbols to a person of ordinary skill in the art (PO Resp. 20) and reliance on the plain and ordinary meaning of the term (PO Resp. 21) do not yield the conclusion that "the broadest reasonable interpretation of the term 'graphical symbols' includes more than just emoticons" (Tr. 97:10–11). *See also* Ex. 2006, 182:17–25 (Petitioner's Declarant stating that "a person having ordinary skill in the art would understand, that graphical symbols, emoticons, can be displayed as combinations of text characters, as combinations of text characters and graphical symbols, and as pictorial signals."). Accordingly, based on the intrinsic evidence before us, we are not persuaded by Petitioner that "graphical symbols" as recited in the claims encompasses combinations of characters.

Finally, we disagree with Petitioner's assertion that the '793 patent as cited in the '837 patent, is not useful because it was not incorporated by reference into the Specification of the '837 patent. Reply 20. The '793 patent is expressly referenced in the Background section of the '837 patent, and akin to the file history of a patent, is intrinsic evidence that may be useful in construing claim terms. *See Kumar v. Ovonic Battery Co.,* 351 F.3d 1364, 1368 (Fed. Cir. 2003) (stating that

IPR2014-01506
Patent 7,894,837 B2

"[Federal Circuit] cases [] establish that prior art cited in a patent or cited in the prosecution history of the patent constitutes intrinsic evidence" and citing cases establishing same); *Arthur A. Collins, Inc. v. Northern Telecom Ltd*., 216 F.3d 1042, 1045 (Fed. Cir. 2000) (noting "[w]hen prior art that sheds light on the meaning of a term is cited by the patentee, it can have particular value as a guide to the proper construction of the term, because it may indicate . . . the meaning of the term to persons skilled in the art").  Based on the full record, we find that the '793 patent as referenced in the '837 patent Specification supports the determination that a person of ordinary skill in the art would understand that "graphical symbol" in light of the '837 patent Specification is a "graphical emoticon" and is distinct from a "textual emoticon."

   With respect to extrinsic evidence, we note that neither party has cited a dictionary or treatise defining the terms textual character or graphical symbol as recited in the challenged claims.  *See* PO Resp. 29 n.9 (noting that the term "graphical symbols" does not appear in the 2003 editions of Merriam-Webster's Dictionary or Newton's Computer Dictionary).  After considering the full record, we find that the extrinsic evidence,[2] does not change our determination that the broadest reasonable interpretation, as would be understood by one of ordinary skill

---

[2] Although Petitioner has presented evidence that Patent Owner seeks a broader construction of the term "graphical symbol" in related district court proceedings (Reply 23–24; Ex. 1034 at 6), Petitioner has not indicated that the district court adopted Patent Owner's proposed construction.  Even if a court had adopted Patent Owner's proposed construction, a district court's interpretation of a claim term is instructive but not binding on our construction.  *See Power Integrations, Inc. v. Lee*, 797 F.3d 1318, 1326 (Fed. Cir. 2015) ("There is no dispute that the board is not generally bound by a prior judicial construction of a claim term.").

IPR2014-01506
Patent 7,894,837 B2

in the art in the context of the entire disclosure, of "graphical symbol" is "graphical emoticon."

### C. Anticipation Based on e740 User's Manual

Petitioner asserts that claims 1–4, 10–15, and 17 are anticipated by e740 User's Manual (Ex. 1004). Pet. 11–36. The e740 User's Manual describes the hardware and software functionality of the Toshiba Pocket PC e740 product. Ex. 1004, 2. The e740 is a touchscreen wireless device that includes MSN Messenger software and wireless IP functions. *Id*. at 13–14. In support of its contentions, Petitioner also provides claim charts and citations to the Declaration testimony of Dr. Arthur T. Brody ("Brody Declaration," Ex. 1003). *Id*.

Based on the complete record, we agree with Patent Owner that Petitioner has not demonstrated by a preponderance of the evidence that the e740 User's Manual explicitly or inherently discloses the limitations of independent claims 1 and 11. *See* PO Resp. 36–37. The Petition applies a construction for "graphical symbol" that includes text emoticons and individual characters themselves as graphical symbols. *See* Pet. 23 n.2, 31 n.4 (citing individual characters such as ")" and "-" as graphical symbols alone). The Petition states that the "combination of characters, each element of the smiley face—':', '-', ')'—is also a graphical symbol" like a "character sequence, such as ':-)' or ';-)', that represents a graphical symbol." Pet. 23 n.2. Based on the claim construction determined above, "graphical symbols" are "graphical emoticons" that are distinct from "textual emoticons" presented by Petitioner. Petitioner's evidence and argument do not establish that the cited reference teaches a "device [] configured to generate textual characters and graphical symbols" as recited in independent claim 1 and related limitations in claim 11. Pet. 12–13, 28.

IPR2014-01506
Patent 7,894,837 B2

Upon review of the complete record, we are not persuaded by Petitioner's arguments that the e740 User's Manual and Morrison disclose graphical emoticons. Reply 22; Tr. 38:13–39:10. Petitioner's efforts to bootstrap MSN Messenger as discussed in the e740 User's Manual (or Morrison) to the disclosure of graphical emoticons is not supported by the Petitioner's evidence and argument as presented in the Petition. Pet. 12–13, 28, 42. In sum, Petitioner has not provided persuasive or sufficient evidence that the e740 User's Manual discloses "graphical symbols" as recited in independent claims 1 and 11. Pet. 11–22 (claim 1), 28–29 (claim 11).

After consideration of the complete record before us, we are not persuaded by a preponderance of the evidence that claims 1–4, 10–15, and 17 are anticipated by e740 User's Manual.

### D. Obviousness Grounds Based on e740 User's Manual and Morrison

Petitioner contends that dependent claims 5 and 16 are obvious in view of the e740 User's Manual and the Nokia IM+ Manual. Pet. 31–41. Petitioner also contends that claims 1–5, 10–17, and 20 are obvious in view of e740 User's Manual and Morrison. Pet. 41–57. Petitioner presents claim charts and evidence in support of the contentions. *Id.*

Petitioner's argument and evidence rely on the same overly broad construction of "graphical symbols" used in the anticipation grounds based on the e740 User's Manual. Pet. 38–39, 42–43, 45, 49 (citing e740 User's Manual for teaching recited claim limitations). As discussed above, Petitioner's argument that the combination of Morrison and the e740 User's Manual teach "graphical symbols" is not supported by the Petition. *Id.* Although we carefully weighed Patent Owner's Declarant testimony, we agree with Patent Owner's argument that the Petition fails to demonstrate that Morrison and the e740 User's Manual teach or

21

IPR2014-01506
Patent 7,894,837 B2

suggest "graphical symbols" or "graphical emoticons" as opposed to textual characters cited by Petitioner.  PO Resp. 44–48; Pet. 38–39, 42–43, 45, 49.

We have considered the arguments and evidence presented by the Petitioner and Patent Owner.  We conclude that Petitioner has not shown by a preponderance of the evidence that each element of claims 1–5, 10–17, and 20 are obvious in view of e740 User's Manual and Morrison or that claims 5 and 16 are obvious in view of the e740 User's Manual and the Nokia IM+ Manual.

### E. Petitioner's Motions to Exclude

Petitioner filed a Motion to Exclude certain evidence.  Paper 34 ("Pet. Mot. Excl.").  Patent Owner filed an Opposition to Petitioner's Motion to Exclude (Paper 42, "PO Opp. Excl."), and Petitioner filed a Reply to Patent Owner's Opposition (Paper 45, "Pet. Reply Excl.").  In particular, Petitioner moves to exclude Patent Owner's exhibits, as discussed below.

### 1. Secondary Consideration Charts (Exhibits 2080–2081)

Petitioner argues it is prejudiced because Patent Owner's secondary considerations exhibits were improperly filed with the sur-reply, depriving Petitioner of a written reply.  Pet. Mot. Excl. 1.  Patent Owner contends that the exhibits were summary originally introduced during cross examination of Patent Owner's expert prior to Petitioner's Reply.  PO Opp. Excl. 2.  As such Patent Owner states that they are not new evidence and instead are merely summaries of evidence introduced in with the Patent Owner's Response.  *Id*. (citing Ex. 2007).

Although we did not rely on these exhibits or reach secondary consideration issues, Patent Owner's belated introduction of summary evidence that Patent Owner admits is in the record with the Patent Owner response is cumulative.  We grant Petitioner's motion to exclude Exhibits 2080 and 2081.

IPR2014-01506
Patent 7,894,837 B2

> 2.  *Dr. Konchitsky's Bournemouth University Ph.D. Dissertation*
> *(Exhibit 2084) and Dr. Konchitsky's Bournemouth University*
> *Master's Thesis (Exhibit 2090)*

Petitioner argues that Exhibit 2084 and Exhibit 2090 are inadmissible because Patent Owner failed to file an English translation with an affidavit attesting to the accuracy of the translation pursuant to 37 C.F.R. § 42.63(b).[3] Pet. Mot. Excl. 2, 4–5.  Rule 42.63(b) provides that "[w]hen a party relies on a document or is required to produce a document in a language other than English, a translation of the document into English and an affidavit attesting to the accuracy of the translation must be filed with the document."

Patent Owner does not dispute that (1) Exhibit 2084 and Exhibit 2090 are written in Hebrew; and (2) no English translation has been provided.  PO Opp. Excl. 3–4, 6–7.  However, Patent Owner argues that Rule 42.63(b) should not apply in circumstances where the substance of the document in a foreign language is not relied upon.  PO Opp. Excl. 3, 5–6.  Alternatively, Patent Owner argues that we should waive the certified translation in these circumstances in the interest of a just, speedy and inexpensive resolution of this proceeding.  *Id.*

Based on the complete record, we are not persuaded by Patent Owner's arguments that we should set aside the requirements of Rule 42.63(b).  For example, Patent Owner argues that the "substance" of Exhibit 2084 is not at issue because the "entire point of Exhibit 2084" is that it is a Ph.D. dissertation written in the Hebrew language.  PO Opp. Excl. 4.  However, without a certified translation, we cannot confirm that Exhibit 2084 contains Dr. Konchitsky's Ph.D. dissertation in Hebrew.  Moreover, we cannot agree with Patent Owner that

---

[3] Petitioner filed its objections within the prescribed time limit provided under Rule 42.64(b)(1).  Paper 29.

IPR2014-01506
Patent 7,894,837 B2

Exhibit 2084 is "indisputably authenticated," as we cannot ascertain the contents of the document to determine authenticity.  *See id.*

Additionally, based on the facts this case, Patent Owner has not explained how waiver of Rule 42.63(b) would promote a just, speedy and inexpensive resolution of the proceeding.  Providing a certified translation of a document in a foreign language allows each party a fair opportunity to develop its respective positions based on a full understanding of the record.  Generally, the development of a clear and complete record promotes the interests of a just, speedy and inexpensive resolution.  In the instance of a missing translation, the record lacks clarity and completeness, which in itself incurs expenditure of resources on issues that could have been avoided altogether.  Accordingly, based on the totality of the facts, we do not waive Rule 42.63(b) for Exhibit 2084 and Exhibit 2090.  Petitioner's Motion to Exclude Exhibit 2084 and Exhibit 2090 is granted.

### 3. *Dr. Konchitsky's Bournemouth University Ph.D. Transcript (Exhibit 2085)*

Petitioner argues that Patent Owner has not established the authenticity of Exhibit 2085 in order to demonstrate that Dr. Konchitsky obtained a genuine Ph.D. from Bournemouth University.  Pet. Mot. Excl. 2–3.  Exhibit 2085 purportedly shows Dr. Konchitsky's Bournemouth University Ph.D. transcript.

Arguably, the Ph.D. transcript allegedly shown in Exhibit 2085 may not be sufficient to establish that Dr. Konchitsky obtained a genuine Ph.D.; however, as discussed above, Dr. Konchitsky's education and experience qualify him to provide his opinion on the subject matter of this proceeding even without taking into consideration whether Dr. Konchitsky has a Ph.D. from Bournemouth University Extension through Ramat Gan College in Israel.  Further, Petitioner has withdrawn any allegation that Dr. Konchitsky himself engaged in forgery or

IPR2014-01506
Patent 7,894,837 B2

perjury related to his Ph.D. Tr. 5:8–22. Thus, we determine that the authenticity
of Exhibit 2085 is moot.

> *4. Dr. Konchitsky's Bournemouth University Ph.D. Payment Receipts*
> *(Exhibit 2087) and Dr. Konchitsky's Master's Payment Receipts*
> *(Exhibit 2091)*

Petitioner has withdrawn its motion to exclude Exhibits 2087 and 2091. Pet.
Exclude Reply 3; Tr. 11:1–4. We treat this request as moot.

> *5. Statement of Mr. Cohen (Exhibit 2092); November 4, 2002 Letter*
> *from Marilyn Russell on Bournemouth University Letterhead*
> *(Exhibit 2093); December 26, 2002 Letter of Professor Meidan on*
> *Bournemouth University Letterhead (Exhibit 2094); October 18,*
> *2015 Letter of Professor Meidan (Exhibit 2095); Statement of Gili*
> *Dror (Exhibit 2096); Statement of Simon Perez (Exhibit 2097);*
> *December 21, 2004 Letter of Recommendation by Stanford*
> *University Professor Lusignan (Exhibit 2102)*

Petitioner presents several arguments challenging the admissibility of
Exhibits 2092–2097 and 2102. Pet. Mot. Excl. 5–14. Petitioner's Motion is
dismissed as moot as this Decision does not rely on Exhibits 2092–2097 and 2102.

Further, we note that in evaluating the credibility of Dr. Konchitsky's
testimony, we considered the circumstances of how Patent Owner came to file an
incorrect translation of Exhibit 2092, which is originally in a foreign language and
purported to be a statement by Mr. Haim Cohen. *Supra* Sect. II(A)(3); *see*
Ex. 1061 (certified translation of Exhibit 2092 filed by Petitioner). Our discussion
of Exhibit 2092 does not rely on the substance of Ex. 2092 to determine
Dr. Konchitsky's credibility, but solely considers Dr. Konchitsky's testimony in
light of the circumstances Patent Owner asserts led to a "mismatched" Exhibit
2092 with an incorrect translation.

Accordingly, we dismiss Petitioner's Motion to Exclude Exhibits 2092–
2097 and 2102 as moot.

IPR2014-01506
Patent 7,894,837 B2

### F. Patent Owner's Motion to Exclude

Patent Owner filed a Motion to Exclude.  Paper 37 ("PO Mot. Excl.").
Petitioner filed an Opposition to Patent Owner's Motion to Exclude (Paper 42,
"Pet. Opp. Excl."), and Patent Owner filed a Reply (Paper 47, "PO Reply Excl.").

#### 1. Exhibits 1006, 1007, and 1009–1011

Patent Owner presents several arguments challenging the admissibility of
Exhibits 1006, 1007, and 1009–1011.  Pet. Mot. Excl. 1–3.  Patent Owner argues
that the Decision on Institution did not expressly rely on these exhibits, that the
exhibits are not relevant or authenticated.  *Id*. at 1-2.  Petitioner responds that the
challenged exhibits are not hearsay and are authentic.  Pet. Opp. Excl. 1–4.

Patent Owner's Motion to Exclude Exhibits 1006, 1007, and 1009–1011 is
dismissed as moot because this Decision does not rely on these exhibits.

#### 2. Exhibits 1022, 1031, 1032, 1039, and 1040

Patent Owner asserts that Exhibits 1022, 1031, 1032, 1039, and 1040 are not
directed at the substance of the unpatentability issues but instead relate to the
alleged deception regarding the academic credentials of Dr. Konchitsky.  PO Mot.
Excl. 4.  Patent Owner contends that these exhibits are inadmissible hearsay and
not relevant.  *Id*. at 3–11.

Because we do not directly on Exhibits 1022, 1031, 1032, 1039, and 1040 in
reaching our Decision on the unpatentability of the challenged claims of the '837
patent, we dismiss Patent Owner's Motion to Exclude Exhibits 1022, 1031, 1032,
1039, and 1040.

#### 3. Exhibits 1036 and 1037

Patent Owner contends that Exhibits 1036 and 1037, first introduced in the
Petitioner's Reply, constitute new evidence that was not included in the Petition

IPR2014-01506
Patent 7,894,837 B2

and should be excluded.  PO Mot. Excl. 11.  Petitioner contends that Exhibits 1036 and 1037 are submitted properly to rebut Patent Owner's construction of the claim term "graphical symbol."  Pet. Opp. Excl. 13–15.

On the full record, we are not persuaded by Patent Owner's argument that Petitioner's exhibits are irrelevant and unreliable hearsay.  PO Mot. Excl. 11–13. Petitioner's Reply cites the Exhibits 1036 and 1037 in rebuttal to Patent Owner's claim interpretation of the cited prior art references, and not as substitute grounds for unpatentability. Reply 22–23.  Finally, Patent Owner's issues regarding the lack of supporting declaration explaining the relevance of the exhibits or the substantive teachings of the exhibits, are best addressed in the weight accorded to Petitioner's arguments and evidence.

Based on the facts of the present case, we deny Patent Owner's Motion to Exclude Exhibits 1036 and 1037.

III.    CONCLUSION

For the foregoing reasons, Petitioner has not demonstrated by a preponderance of the evidence that:

(1) claims 1–4, 10–15, and 17 of the '837 patent are unpatentable under 35 U.S.C. § 102 as anticipated by e740 User's Manual;

(2) claims 1–5, 10–17, and 20 of the '837 patent are unpatentable under 35 U.S.C. § 103(a) as obvious over the e740 User's Manual and Morrison; and

(3) claims 5 and 16 of the '837 patent are unpatentable under 35 U.S.C. § 103(a) as obvious over the e740 User's Manual and the Nokia IM+ Manual.

IPR2014-01506
Patent 7,894,837 B2

IV.    ORDER

In consideration of the foregoing, it is hereby:

ORDERED that, based on a preponderance of the evidence, claims 1–5, 10–17, and 20 of U.S. Patent No. 7,894,837 have not been shown to be unpatentable;

FURTHER ORDERED that Petitioner's Motion to Exclude Exhibits 2080, 2081, 2084, and 2090 is *granted*;

FURTHER ORDERED that Petitioner's Motion to Exclude Exhibits 2085, 2087, 2091–2097, and 2102 is *dismissed as moot*;

FURTHER ORDERED that Patent Owner's Motion to Exclude Exhibits 1006, 1007, 1009–1011, 1022, 1031, 1032,1039, and 1040 is *dismissed as moot*;

FURTHER ORDERED that Patent Owner's Motion to Exclude Exhibits 1036 and 1037 is *denied;* and

FURTHER ORDERED, because this is a final written decision, the parties to this proceeding seeking judicial review of our Decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

IPR2014-01506
Patent 7,894,837 B2

PETITIONER:

Robert Mattson
cpdocketmattson@oblon.com

Jason Kern
cpdocketkern@oblon.com

John Presper
cpdocketpresper@oblon.com

PATENT OWNER:

Stephen Risley
srisley@srtslaw.com

Robert Dulaney
rdulaney@srtslaw.com

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on  May 11, 2016
by:

☐ U.S. Mail

☐ Fax

☐ Hand

☒ Electronic Means (by E-mail or CM/ECF)

Robert C. Mattson                                         /Robert C. Mattson/

            Name of Counsel                               Signature of Counsel

Law Firm                 Oblon, McClelland, Maier & Neustadt, LLP

Address                  1940 Duke Street

City, State, Zip         Alexandria, Virginia  22314

Telephone Number         (703) 412-6466

Fax Number               (703) 413-2220

E-Mail Address           cpdocketmattson@oblon.com

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

Reset Fields

███████████

**From:** ███████████████████
**Sent:** Wednesday, May 11, 2016 6:41 PM
**To:** ██████████████
**Subject:** Agency Petition (fee) Transaction Submitted

**Categories:** New Appeal


Transaction submitted by Robert Carter Mattson on 05/11/2016 at 06:40 PM

**Description**: Agency Petition (fee)
**Payment Method**: CreditCard
**Fee Receipt Number**: 13-23878-306
**Fee Amount**: $500.00